IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT NO. 9, <br> Plaintiff, <br><br> v. <br><br> OLIN CORPORATION, <br> Defendant. <br> ──────────────────────── <br> OLIN CORPORATION, <br> Counter-Claimant, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS DISTRICT NO. 9, <br> Counter-Defendant. | Case No. 20–CV–00221–JPG |

## **MEMORANDUM & ORDER**

This is a labor-relations case. Before the Court are Plaintiff/Counter-Defendant International Association of Machinists and Aerospace Workers District No. 9's ("Union") Motion for Summary Judgment, (ECF No. 22), and Defendant/Counter-Claimant Olin Corporation's ("Olin") Motion for Summary Judgment, (ECF No. 24). For the reasons below, the Court:

- **GRANTS** the Union's Motion;
- **DENIES** Olin's Motion;
- **ORDERS** Olin's compliance with the arbitration award; and
- **ORDERS** Olin to pay the Union's attorney's fees and costs.

## I. PROCEDURAL & FACTUAL HISTORY

The litigants entered into a collective-bargaining agreement ("CBA") in December 2016. (Compl. 2, ECF No. 1). In it, Olin agreed not to discipline employees "without just cause." (CBA § 4.1, ECF No. 1-1). Disciplined employees that disagree with Olin's just-cause determination can file a grievance with their union steward. (*Id.* § 4.2). If the dispute cannot be resolved internally, then the employee "may appeal the grievance to arbitration . . . ." (*Id.* § 4.7(e)). The arbitrator must then promptly hold a hearing and issue a written opinion. (*Id.* § 4.10). The arbitrator cannot, however, "pass upon the Company's methods, practices, procedures or its established non-discriminatory safety rules, or plant rules and regulations." (*Id.* § 4.11(a)). That said, the arbitrator must still "determine the question of fact of such occurrence" and "rule on the degree of any disciplinary action taken by the Company . . . ." (*Id.* § 4.11(c)). The litigants also agreed that arbitration awards are "final and binding as to all issues involved in the grievance." (*Id.* § 4.12).

In 2018, James Jackson—an Olin employee and union member—was terminated after an altercation with a coworker. (*See* Opinion & Award 2, ECF No. 1–2). The dispute occurred when Jackson intentionally placed two steel drums in a large doorway to prevent others from parking forklifts there—even though "it is not a violation of [Olin's] rules or policy to park the forklift in the driveway." (*Id.* at 2–3). Jackson's plan worked, and a coworker's forklift was blocked by the drums. (*Id.* at 3). The coworker, however, was not amused; he walked about "70 yards to a completely different building," where he spat in Jackson's face. (*Id.* at 6–7). Olin, which "consistently terminates employees when they incite a fight," terminated both Jackson and the coworker. (*Id.* at 5).

The Union argued on Jackson's behalf that his termination was not supported by *just cause* because there was never a "fight"—Jackson turned his back to the coworker and sought out his

union steward. (*Id.* at 6–7). Even so, Olin argued that Jackson's conduct was "patently inappropriate and unacceptable," justifying termination. (*Id.* at 6).

The Union then took the matter to arbitration, and an arbitrator conducted a hearing. "Both parties were afforded full opportunity to present testimony and evidence and to examine and cross examine witnesses." (*Id.* at 1–2). The arbitrator then issued a written opinion, concluding that *just cause* did not exist for Jackson's termination: Although Jackson's "actions may have set the stage for the confrontation," termination, in the arbitrator's opinion, was an unreasonable penalty. (*Id.* at 8–10). He therefore ordered Olin to reinstate Jackson with back pay. (*Id.* at 11).

Since then, Olin reinstated Jackson but still refuses to give him back pay. (Compl. at 3). Olin also rejected the arbitrator's continued jurisdiction to enforce the award. (*Id.*). The Union then sued here, asking the Court to enforce it. (*Id.* at 4). Olin, on the other hand, asks the Court to vacate the award based on supposed analytical defects. Both moved for summary judgment.

## II.     LEGAL STANDARD

Federal district courts are empowered to vacate an arbitration "award upon the application of any party to the arbitration . . . where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). But "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). The party seeking relief from the award therefore carries a heavy burden: Even " 'manifest disregard of the law' is not a ground on which a court may reject an arbitrator's award under the Federal Arbitration Act." *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms., Inc.*, 660 F.3d 281, 285 (7th Cir. 2011). Rather, "his award is legitimate . . . so long as it draws its essence from the collective bargaining agreement."

The public policy favoring "the speedy resolution of grievances by private mechanisms" protects individuals' freedom to contract, especially in the context of collective bargaining. *United Paperworkers Int'l Union, ADL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

> The reasons for insulating arbitral decision from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government . . . . Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. **Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts**. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Id.* at 37–38 (emphasis added) (internal citations omitted).

Finally, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This often occurs when the dispute is mainly legal, rather than factual. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

### III.   ANALYSIS

Olin argues that the Court should vacate the arbitration award because the arbitrator misapplied or disregarded certain company policies when determining whether *just cause* justified Jackson's termination. (Olin's Br. in Supp. of Its Mot. for Summ. J. 1–4, 8, ECF No. 25) [hereinafter "Olin's Br."]. For example, Olin's Plant Rules prohibit "fighting or inciting a fight" and "acting immorally or indecently." (*Id.* at 3–4). In Olin's view, Jackson's behavior fell into

either category; yet the arbitrator "altogether failed to analyze" whether Jackson acted immorally or indecently. (*Id.* at 8). Although the CBA requires employees to abide by Olin's Rules, (CBA § 5.1), Olin contends that the arbitrator downplayed the incident and doled out his "own brand of industrial justice," (Olin's Br. at 15, 18). The Court disagrees.

The arbitrator fulfilled his obligations under the CBA and acted within his authority. The CBA authorized him "to rule on the degree of any disciplinary action taken by" Olin and pass on "the application and interpretation" of the CBA—not Olin's "methods, practices, procedures, or its established non-discriminatory safety rules, or plant rules and regulation." (CBA §§ 4.2, 4.11). In other words, the arbitrator was tasked with determining whether the discipline Olin imposed on Jackson was supported by *just cause* after determining "the question of fact of such occurrence." (*Id.* §§ 4.1, 4.11). That is exactly what he did—after providing the litigants with a chance to present evidence, produce testimony, and cross-examine witnesses in the presence of a court reporter and with help from counsel. What's more, the Court disagrees with Olin's premise that the arbitrator ignored its policy against immoral or indecent behavior. Rather, he found that "the facts at hand do not support" Olin's argument that "immediate termination is warranted when a worker's actions are egregious." (Opinion & Award at 10).

Even if the arbitrator erred, it was not of the degree required to overturn his award—he was, at the very least, arguably applying the CBA and acting within the scope of his authority by ordering reinstating with back pay. The litigants agreed that "[a]n arbitration award shall be final and binding as to all issues involved in the grievance." (CBA § 4.12). This Court too is bound (and persuaded) by the Supreme Court's directive to enforce arbitration awards even in the face of "serious error." *See Misco, Inc.*, 484 U.S. at 38. While Olin may disagree with the arbitrator's factual findings or his application of law to fact, the Court is not at liberty "to reconsider the merits

of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* at 36. Holding otherwise—that is, to allow for an "escape hatch" whenever an arbitrator commits an error—would disrupt collective bargaining by imposing un-bargained-for terms into the CBA.

Alternatively, Olin argues that the arbitrator exceeded the scope of his authority when he retained jurisdiction over the dispute to see to its enforcement. But the CBA authorized the arbitrator to resolve "all issues involved in the grievance." (CBA § 4.12). Surely enforcement of the award is involved in the grievance. In any event, his decision to retain jurisdiction, even if beyond the scope of his authority, was of little consequence—if the arbitrator cannot enforce the award, then the Court will.

### IV.   CONCLUSION

The Court:

- **GRANTS** the Union's Motion;
- **DENIES** Olin's Motion;
- **ORDERS** Olin's compliance with the arbitration award; and
- **ORDERS** Olin to pay the Union's attorney's fees and costs.

**IT IS SO ORDERED.**

**Dated: Tuesday, September 1, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
